SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**NICOLE M. HERMANN, OSB #126353**
nicole.hermann@usdoj.gov
**STEVEN CHAMBERLIN, TXSB #24095296**
steven.chamberlin@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**JOSE GUADALUPE VALDEZ, JR.,**<br><br>**Defendant.** | **3:25-cr-00466-IM**<br><br>**GOVERNMENT'S TRIAL MEMORANDUM**<br><br>**Trial: October 6, 2026** |

The United States of America, by Scott E. Bradford, United States Attorney for the District of Oregon, through Nicole M. Hermann and Steven Chamberlin, Assistant United States Attorneys (AUSAs) for the District of Oregon, provides this memorandum addressing issues related to trial in the above-entitled matter.

## I. PROCEDURAL BACKGROUND

Defendant is charged by indictment with felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and possession with the intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). ECF No. 1. The indictment includes two forfeiture allegations.

In April 2026, defendant filed a motion to suppress evidence and a motion to dismiss. ECF Nos. 22, 23. This Court denied defendant's motion to dismiss the indictment and denied defendant's motion to suppress defendant's statements. ECF Nos. 45, 46. Defendant remains in custody pending trial. The pretrial conference is set for September 17, 2026. A four-day jury trial is scheduled to begin on October 6, 2026.

## II. FACTUAL BACKGROUND

### A. Theft Investigation and Determination of Probable Cause

On May 11, 2025, at 1:23 p.m., Washington County Sheriff's Deputy Michael Vargas responded to a report of a theft that had just occurred at the Coastal Farm and Ranch, a department store located in Cornelius, Oregon. The dispatch information included a vehicle and driver description and the vehicle's direction of travel.

Deputy Vargas was quickly able to locate and stop the vehicle nearby in the Hillsboro area. He contacted the driver and sole occupant of the vehicle, who was identified as Teshia Hutchinson. Deputy Vargas could clearly see several items on the front passenger seat of the vehicle that appeared consistent with items taken from Coastal Farm. On contact, Ms. Hutchinson acknowledged committing the theft and that stolen items would be in the vehicle.

After placing Ms. Hutchinson in the back of his police vehicle, Deputy Vargas conducted a search of her vehicle to locate and identify the stolen items. As he removed items from the passenger seat, Deputy Vargas could see a straw, tin foil, and a single pill of what appeared to be fentanyl near the center console. Deputy Vargas re-contacted Ms. Hutchinson who acknowledged it was fentanyl in the vehicle. Ms. Hutchinson also mentioned that she had a male passenger who was with her at the store, but she left the store so quickly that she left him behind. Ms. Hutchinson added that if there was a black backpack in the vehicle, it was not hers.

Deputy Vargas continued to search the vehicle for additional items of theft and for controlled substances, including a search of a black backpack located on the passenger seat. Inside the backpack, Deputy Vargas located a leather shoulder-style holster, a pouch with 9mm ammunition, a small silver hatchet, and, inside a black car manual folder, a black Smith and Wesson 9mm handgun. Also in the backpack was a long knife and another leather pouch with what appeared to be methamphetamine, along with new packaging bags and a digital scale with white powdery residue. The methamphetamine was later tested and weighed at 48.7 grams.

After searching the backpack, Deputy Vargas returned to speak with Ms. Hutchinson to identify her male passenger. Ms. Hutchinson stated his name was "Wally Valdez." Deputy Vargas immediately recognized the name as one of defendant’s known aliases and knew from prior interactions that “Wally” lived in the Cornelius area. Deputy Vargas also knew defendant was a convicted felon and prohibited from possessing firearms.

During a later interview, Ms. Hutchinson stated that she knew it was defendant's backpack because when he left his residence and got into her vehicle earlier that day, he was wearing the backpack and placed it at his feet on the passenger side of the vehicle. She did not see defendant when she left the store with her stolen items and left the area without him. Deputy Vargas radioed for additional units to assist with locating defendant near Coastal Farm or defendant’s residence. Deputy Vargas also contacted members of the Washington County Sheriff’s Office (WCSO) drug team who he knew were investigating the defendant regarding the distribution of controlled substances, to include use of a pole camera monitoring his residence.

Deputy Vargas and Deputy Hansen, who subsequently arrived, then continued to speak with Ms. Hutchinson regarding defendant and the theft allegations. During the conversation, Ms. Hutchinson’s phone, which deputies were holding, started to ring, displaying the name "Wally" on the caller ID. A short while later, Ms. Hutchinson received a text message from "Wally." The

text message stated: *"Don't forget I know where your dad lives,,,you wouldn't want anything to happen to him would you bring my shit now Or i go to Vancouver Motherfucker I'm giving you 15min."* Deputies recognized the phone number associated with the contact "Wally" as a number defendant had provided as his own number during past law enforcement contact(s).

**B. Defendant's Arrest and Interview**

As law enforcement began to look for defendant following the initial request by Deputy Vargas, a vehicle believed to be driven by defendant's father with a male passenger was seen in the area, driving away from Coastal Farm. After receipt of the text from Wally, the same vehicle was seen again driven by defendant's father but now without a passenger. The vehicle returned to defendant's residence, and a short while later, investigators saw defendant exit the house and stand in the grass of his front yard. Deputies approached the residence and, while standing in the street, told defendant he was under arrest and directed him to walk towards them. Defendant began to cross the grass towards the street and deputies walked onto the grass to meet the defendant and take him into custody. As defendant was being detained, Deputy Hansen with the WCSO drug team arrived and defendant was walked over to his vehicle for an interview.

Deputy Hansen interviewed defendant inside his unmarked law enforcement vehicle. The interview was not recorded. Deputy Hansen first read defendant his *Miranda* rights and asked if he understood them. Defendant replied, "Yes." During the interview, defendant initially admitted to purchasing methamphetamine and fentanyl for sale and provided some details regarding those transactions. Deputy Hansen then explained that they located a backpack in Hutchinson's car that contained a gun and drugs, and they believed it belonged to defendant. Deputy Hansen also noted that officers had seen the text message defendant sent to Ms. Hutchinson demanding his property back. Defendant told Deputy Hansen that Ms. Hutchinson "had a bag of crack that was mine and I wanted it back," which is why he sent the text message. Defendant stated he believed

the drugs were in the vehicle somewhere. Defendant also stated he had a knife, axe, and an Oregon Trail EBT card somewhere in the vehicle but denied possession of a backpack. In relation to the items found in the backpack, defendant stated he uses methamphetamine but does not sell drugs, though would occasionally trade drugs for services. Deputy Hansen then explained to defendant that there was a camera facing his house and wondered if it would show defendant exiting his house that day with a backpack. Defendant stated he would likely be seen carrying multiple bags, all of which belonged to Hutchinson. Defendant continued to deny knowledge of the backpack or the firearm located in Hutchinson's car. When Deputy Hansen asked about DNA or fingerprints, defendant stated that he did not know if his fingerprints or DNA would be on the firearm. Defendant was subsequently arrested and charged with felon in possession of a firearm and unlawful delivery of methamphetamine.

**C. Review of Video and Additional Records**

Following defendant's arrest, law enforcement reviewed footage from the pole camera facing defendant's house. The camera footage captured defendant leaving his residence the day of his arrest at approximately 1232 hours carrying what appears to be the same backpack recovered from Hutchinson's vehicle. Defendant is not seen carrying any other bags as he enters the front passenger seat of Hutchison's vehicle. The timeline established by the video is consistent with Ms. Hutchinson's account of the trip to Coastal Farm and subsequent traffic stop.

Additionally, Washington County Sheriff's Deputies were able to obtain video footage from Coastal Farm. Video surveillance captures Ms. Hutchinson and the defendant entering the store at about 1306 hours. The defendant is wearing similar clothing in the video as at the time of his arrest. In the store, Ms. Hutchinson selects several items and quickly exits the store, making no attempts to purchase the merchandise she selected. Ms. Hutchinson exits the store alone at

about 1320 hours, leaving defendant in the store. Defendant is then seen exiting the store alone several minutes later.

The methamphetamine seized from the backpack was tested by Forensic Chemist Michael L. Huynh, of the Drug Enforcement Administration Western Laboratory, and confirmed to contain methamphetamine, weighing a net total of 48.7 grams. Mr. Huynh's report and notes have been provided in discovery. Mr. Huynh's qualifications and anticipated testimony have been provided in the Government's Expert Notice.

DNA testing on the seized firearm showed that due to the complex nature of this mixed DNA profile, it is inconclusive for comparison purposes. A certificate of analysis was completed by Forensic Analyst Daniel I. Aguilar with DNA International lab. The report and notes have been provided in discovery and Mr. Aguilar's qualifications and anticipated testimony have also been provided in the Government's Expert Notice.

## III. ELEMENTS OF THE OFFENSES

Defendant is charged by indictment in three Counts: Count 1 alleges Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1); Count 2 alleges Possession of Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A); and Count 3 alleges Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).

### A. Count 1: Felon in Possession of a Firearm (18 U.S.C. § 922(g)(1))

The elements of Count 1 are the following:

First, that defendant knowingly possessed a firearm;

Second, the firearm had been transported in interstate or foreign commerce;

Third, at the time defendant possessed the firearm, he had previously been convicted of a crime punishable by imprisonment exceeding one year; and

Fourth, at the time defendant possessed the firearm, he knew he had previously been convicted of a crime punishable by imprisonment exceeding one year. 18 U.S.C. § 922(g)(1), Model Jury Instruction for the Ninth Circuit § 14.16 (2022).

To prove defendant possessed the firearm, the government must establish that defendant knew of its presence and had physical control of it or knew of its presence and had the power and intention to control it. More than one person can be in possession of something if each knows of its presence and has the power and intention to control it. Model Jury Instruction for the Ninth Circuit § 6.15 (2022, revised 2017). To show constructive possession, the government must "prove a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the firearms." *United States v. Carrasco,* 257 F.3d 1045, 1049 (9th Cir. 2001) (internal quotation marks omitted). "Dominion and control" means that a defendant had knowledge of the weapon and the power and intent to exercise control over it. *United States v. Vasquez*, 654 F.3d 880, 885 (9th Cir. 2011) (internal citation omitted). The government can prove knowledge and intent to exercise control over a weapon through circumstantial evidence. *Id.* (citation omitted).

Evidence will establish defendant's possession of the firearm recovered from the black backpack in Ms. Hutchinson's vehicle. Although defendant's DNA was not found on the firearm, the circumstances of its recovery, including the statements of Ms. Hutchinson and the items located with the firearm, along with the pole cam video of defendant carrying the backpack as he leaves his residence and enters Ms. Hutchinson's vehicle, show that it belongs to defendant, evidence of his possession of the firearm, which was contained in that backpack.

Defendant is a convicted felon, and he knew it. He was on supervised release from a prior federal firearm conviction for which he was sentenced to over a year of imprisonment when he committed the offenses in this case.

The government anticipates that defendant will stipulate to his status as a previously convicted felon. At the time of this filing the parties are working on proposed stipulations to include language surrounding defendant's status as a felon. However, if defendant does not so stipulate, the government will introduce evidence at trial regarding the last three of the prior felony convictions listed in Count 1 of the indictment, including:

- Unlawful Delivery of a Controlled Substance - Methamphetamine, on or about July 11, 2013, in the Circuit Court of the State of Oregon for Washington County, case number Cl30622CR;
- Unlawful Delivery of a Controlled Substance - Methamphetamine, on or about August 18, 2014, in the Circuit Court of the State of Oregon for Washington County, case number C141541 CR; and
- Felon in Possession of a Firearm, on or about July 26, 2021, in the District Court for the District of Oregon, case number 3:19-cr-00323-IM-2.

**B. Count 2: Possession of a Firearm in Furtherance of Drug Trafficking (19 U.S.C. § 924(c)(1)(A)(i))**

The elements of Count 2 are the following:

First, defendant committed the crime of possession with the intent to distribute methamphetamine, as alleged in Count 3 of the indictment;

Second, defendant knowingly possessed a firearm, a 9MM Smith and Wesson Model 908, bearing serial number VKM3104; and

Third, defendant possessed the firearm in furtherance of the crime alleged in Count 3 of the indictment. A person "possesses" a firearm if the person knows of its presence and has physical control of it or knows of its presence and has the power and intention to control it.

The phrase "in furtherance of" means that the defendant possessed the firearm with the subjective intent of promoting or facilitating the crime of Possession with Intent to Distribute Methamphetamine. *See* Model Jury Instruction for the Ninth Circuit § 14.23 (2022).

A conviction under § 924(c) for possession of a firearm "in furtherance of" a drug trafficking offense requires proof that the defendant possessed the weapon to promote or facilitate the underlying crime. *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004) (citation omitted). "[T]he natural meaning of 'in furtherance of' is 'furthering, advancing or helping forward.'" *United States v. Hector,* 474 F.3d 1150, 1157 (9th Cir.2007) (internal citations omitted).

"Evidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c)." *Id*; *see also* H.R.Rep. No. 105-344 (1997), 1997 WL 668339, at *12 ("[T]he government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity"). In other words, the 'in furtherance' element of § 924(c) turns on the intent of the defendant. *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004). This is generally a fact-specific inquiry that focuses on the evidence linking the firearm to the drug crime. *United States v. Mahan*, 586 F.3d 1185, 1188 (9th Cir. 2009) (citation omitted). "When guns are located within strategic reach of a dealer such that they can use the guns to protect their illicit trade or the proceeds thereof, then a defendant's possession would typically be characterized as 'in furtherance of' the drug crime.'" *Id*. (citation omitted). *See also United States v. Lopez,* 477 F.3d 1110, 1115 (9th Cir.2007) (finding violation of section 924(c) when both drugs and firearms were within defendant's reach when he was stopped by the police).

### C. Count 3: Possession with Intent to Distribute Methamphetamine (21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B))

The elements of Count 3 are the following:

First, the defendant knowingly possessed methamphetamine; and,

Second, the defendant possessed it with the intent to distribute it to another person.

Third, defendant possessed at least five grams of methamphetamine.

Model Jury Instr. for the Ninth Circuit, § 12.1 (2024) (modified).

Possession of a controlled substance with intent to distribute requires the jury to find that the defendant (1) knowingly possessed drugs and (2) possessed them with the intent to deliver them to another person. *See, for example, United States v. Orduno-Aguilera*, 183 F.3d 1138, 1140 (9th Cir. 1999); *United States v. Seley*, 957 F.2d 717, 721 (9th Cir. 1992). *See also United States v. Magallon-Jimenez,* 219 F.3d 1109, 1112 (9th Cir. 2000).

The defendant does not need to know what the controlled substance is so long as the defendant knows that he or she has possession of such a substance. *United States v. Jewell*, 532 F.2d 697, 698 (9th Cir. 1976) (en banc). *See also United States v. Soto-Zuniga*, 837 F.3d 992, 1004-05 (9th Cir. 2016) (knowledge of type and quantity of drugs not element of offense).

After *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Ninth Circuit has held that where the amount of drugs "increases the prescribed statutory maximum penalty to which a criminal defendant is exposed," the amount of drugs must be decided by a jury beyond a reasonable doubt. *See United States v. Garcia-Guizar*, 234 F.3d 483, 488 (9th Cir. 2000). However, the government need not prove that the defendant knew the type or quantity of controlled substance he possessed to obtain either a conviction under § 841(a) or a particular sentence under § 841(b). It is sufficient that the jury finds beyond a reasonable doubt that the defendant actually possessed a certain type and quantity of drugs. *United States v. Jefferson*, 791 F.3d 1013, 1015 (9th Cir.

2015) (holding in context of parallel statute, 21 U.S.C. § 960, that government is not required to prove defendant's knowledge of type or quantity of drugs either for conviction or for heightened statutory penalties to apply).

## IV. WITNESSES AND EXHIBITS

Simultaneous with the filing of this Trial Memorandum, the government is filing a witness list naming 17 trial witnesses. The government filed Expert Notice for four of the witnesses in a separate filing. The government is planning to offer approximately 39 exhibits in the form of video, photographs, physical exhibits, lab reports, and records. Those numbers may change based on stipulations, defense arguments, and pretrial rulings.

### A. Expert Witnesses

Simultaneous with the filing of this Trial Memorandum, the government is also filing a Notice of Expert Testimony that describes the anticipated testimony of a DEA forensic chemist (drug identification), a forensic DNA analyst, an ATF Nexus expert, and a drug trafficking expert. This number may be decreased depending on potential stipulations (*e.g.*, drug identification and quantity) or increased based upon defendant's trial submissions. Fed. R. Evid.702 provides that "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," an expert "may testify thereto." Red. R. Evid. 702.

Relevant to the drug trafficking expert, government law enforcement experts may "'testify as to the general practices of criminals to establish the defendants' 'modus operandi' which 'helps the jury to understand complex criminal activities and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior.'" *United States v. Freeman*, 498 F.3d 893, 906 (9th Cir. 2007). For example, the Ninth Circuit "ha[s] allowed

modus operandi testimony that drug traffickers often employ counter-surveillance driving techniques, register cars in others' names, make narcotics and cash deliveries in public parking lots, and frequently use pagers and public telephones." *Id.* (internal citations omitted); *see also United States v. Perez*, 280 F.3d 318, 341–42 (3d Cir. 2002) (permitting expert testimony regarding drug traffickers' use of cell phones and pagers to frustrate police investigations); *United States v. Ham*, 628 F.3d 801, 805 (6th Cir. 2011) (permitting expert testimony regarding drug traffickers' use of cell phones as a "method of operation of drug dealers").

A narcotics expert may testify about common manner and means for drug trafficking organizations. A properly qualified drug investigator may testify that a quantity of drugs is more consistent with distribution than personal use without violating Fed. R. Evid. 704(b), which bars an expert from giving an opinion on whether a defendant had a mental state that constitutes an element of the crime. *United States v. Gonzalez*, 307 F.3d 906, 911-12 (9th Cir. 2002). The expert may not state an opinion or inference as to whether the defendant in fact did or did not possess the requisite mental state but may provide testimony that would allow such an inference or conclusion to be drawn. *United States v. Younger*, 398 F.3d 1179, 1189 (9th Cir. 2005). The government may ask hypothetical questions regarding the intent to distribute narcotics of a typical person in roughly the same situation as defendant. *Id*. at 1190; *Gonzalez*, 307 F.3d at 911 (explaining that an expert may testify that a "person" possessing the evidence in question would possess the drugs for purpose of distributing).

Expert testimony as to the retail value of drugs seized is admissible without being subject to the factors applicable to other kinds of expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1994). *United States v. Mendoza-Paz*, 286 F.3d 1104, 1112-1113 (9th Cir. 2002). In addition, "drug jargon" is a proper subject for expert testimony.

*United States v. Reed*, 575 F.3d 900, 922 (9th Cir. 2009) citing *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007). Rule 702, and the Advisory Committee Notes on the same, authorizes the admission of "testimony by law enforcement officers concerning the meaning of words used by drug traffickers." *Reed*, 575 F.3d at 922. "Coded terms are the subject of expert testimony, when based on the witness's experience in investigating narcotics offenses. The meaning of other, ambiguous terms is the proper subject of lay testimony, when based on the witness's knowledge of the particular case and the defendants." *Id.*

## V. STIPULATIONS

As of the date of this filing, the parties are continuing to discuss possible stipulations.

## VI. EVIDENTIARY AND LEGAL ISSUES

### A. 404(b) Evidence

Under Fed. R. Evid. 404(b), the government must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial," and "do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice." Simultaneously with the filing of this Trial Memorandum, the government is also filing a notice of intent to use evidence of other crimes, wrongs, and acts pursuant to Fed. R. 404(b). The filed notice articulates the permitted purpose(s) for admission of the evidence and the reasoning to support that purpose.

### B. Defendant's Post-Arrest Statements

After his arrest and *Miranda* advisal, Deputy Hansen interviewed defendant who made several statements regarding the purchase of controlled substances, drug dealing, and his possible possession of the backpack at issue. Following the interview, defendant made additional statements to officers, captured via body camera footage, regarding the drug distribution

information he provided and the impact of his arrest. This Court denied defendant's motion to suppress those statements and the government intends to offer some of defendant's statements at trial. These opposing party statements are admissible non-hearsay when offered against the defendant. Fed. R. Evid. 801(d)(2).

**C. Prior Conviction**

If the defendant testifies at trial, the government will seek to impeach him with the evidence of his prior felony convictions for Delivery of Methamphetamine in 2013, Delivery of Methamphetamine and Felon in Possession of a Firearm in 2014, and Felon in Possession of a Firearm in 2021. Under Fed. R. Evid. 609(a), evidence of prior felony convictions is admissible if the court determines that their probative value outweighs their prejudicial effect. *United States v. Martinez-Martinez*, 369 F.3d 1076, 1088 (9th Cir. 2004).

Fed. R. Evid. 609 provides in pertinent part that for the purpose of attacking the credibility of a witness, evidence that an accused is convicted of a crime punishable by death or imprisonment in excess of one year shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect. In this case, evidence of defendant's prior conviction of Delivery of Methamphetamine and Felon in Possession of a Firearm are more probative than prejudicial when reviewing the impeachment value of the crimes, the dates of the prior conviction in relation to defendant's criminal history, the similarity of the prior convictions to the underlying case, and the level of importance of defendant's testimony in the underlying case. *United States. v. Alexander,* 48 F.3d 1477 (9th Cir. 1995).

Should the government be allowed to use the defendant's prior felony conviction to impeach him, an appropriate limiting instruction regarding the use of the prior conviction should

be given to the jury. Such an instruction is included in the parties jointly filed proposed jury instructions. Model Jury Instr. for the Ninth Circuit, § 3.6 (2024).

**D. Forfeiture**

The indictment contains a general drug forfeiture allegation under Title 21, United States Code, Section 853 and a specific firearm forfeiture allegation, for the Smith and Wesson firearm charged in Count 1, under Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c). The government asks that the Court establish whether defendant requests a jury determination of forfeiture of specific assets before the jury deliberates on guilt. If defendant asks to retain the jury for a forfeiture determination, the government requests that the Court take the following steps: (1) After the jury has returned a guilty verdict on any count of the superseding indictment, instruct the jury on the issue of forfeiture; (2) Permit counsel to present additional evidence and a short argument on the forfeiture issue; (3) Provide the jury with a special verdict form; and (4) Instruct the jury regarding property subject to forfeiture and the burden of proof.

Dated: August 27, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Nicole Hermann*
NICOLE HERMANN, OSB #126353
Assistant United States Attorney

*/s/ Steven Chamberlin*
STEVEN CHAMBERLIN, TXSB #24095296
Assistant United States Attorney